ORAL ARGUMENT NOT YET SCHEDULED

Nos. 22-7129 & 22-7130
_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**Oyoma ASINOR**, *et al.*, *Plaintiffs-Appellants*,

v.

**DISTRICT OF COLUMBIA**, *et al.*, *Defendants-Appellees*.
_____

**Alexander CAMERON**, *et al.*, *Plaintiffs-Appellants*,

v.

**DISTRICT OF COLUMBIA**, *Defendant-Appellee*.
_____

Consolidated Appeals from the U.S. District Court for the District of Columbia
(Nos. 1:21-cv-02158-APM and 1:21-cv-02908-APM)
_____

**OPENING BRIEF FOR APPELLANTS**

Jacqueline Kutnik-Bauder
Carlos Andino
Jonathan M. Smith
Kristin L. McGough
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org

*Counsel for Plaintiffs-Appellants
in Cameron v. District of Columbia,
No. 22-7130*

Scott Michelman
Michael Perloff
Arthur B. Spitzer
Laura K. Follansbee
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 601-4267
smichelman@acludc.org

*Counsel for Plaintiffs-Appellants
in Asinor v. District of Columbia,
No. 22-7120, and Cameron v.
District of Columbia, No. 22-7130*

(*counsel listing continues*)

Tara L. Reinhart
Julia K. York
Joseph M. Sandman
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7630
tara.reinhart@probonolaw.com

Jeffrey L. Light
Law Office of Jeffrey L. Light
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 277-6213
jeffrey@lawofficeofjeffreylight.com

*Further Counsel for Plaintiffs-Appellants
in Cameron v. District of Columbia,
No. 22-7130*

February 21, 2023

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

The parties before the district court and this Court in these cases are:

> *Plaintiffs-Appellants*: Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, Jake Oster, Oyoma Asinor and Bryan Dozier.
>
> *Defendant-Appellant*: District of Columbia, Robert Glover, Shawn Caldwell, and John Does 1-3.

### B. Rulings Under Review

The rulings under review are:

> The Order and Opinion of the United States District Court for the District of Columbia (Mehta, J.), No. 1:21-cv-02908, ECF 24 & 25 (Aug. 29, 2022), insofar as they dismissed Claims I and III of Plaintiffs' Complaint, ECF 1, and deny Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, ECF 9.The district court's opinion has not been reported in the Federal Reporter but is available via Westlaw as *Cameron v. District of Columbia*, 2022 WL 3715779 (D.D.C. Aug. 29, 2022).
>
> The Order and Opinion of the United States District Court for the District of Columbia (Mehta, J.), No. 1:21-cv-02158, ECF 33 & 34 (Aug. 29, 2022) insofar as they dismissed Claims 1, 2, 3, 4, and 6 of Plaintiffs' Second Amended Complaint, ECF 24. The district court's opinion has not been reported in the Federal Reporter but is available via Westlaw as *Asinor v. District of Columbia*, 2022 WL 3715777 (D.D.C. Aug. 29, 2022).

### C. Related Cases

These cases have not previously been before this Court, and counsel is unaware of any related cases currently pending in this Court or the district court.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iv

GLOSSARY .................................................................................ix

INTRODUCTION ..........................................................................1

JURISDICTION ...........................................................................4

ISSUE PRESENTED ......................................................................5

STATEMENT OF THE CASE ...........................................................5

    A.    MPD Seizes the *Cameron* Plaintiffs' Cell Phones and
           Retains Them for Over Nine Months ....................................5

    B.    MPD Seizes Mr. Asinor's Cell Phone and Retains It for
           Over Eleven Months .......................................................8

    C.    The District's Custom of Unreasonably Retaining
           Cell Phones ..................................................................8

    D.    Procedural History .........................................................10

SUMMARY OF ARGUMENT ...........................................................13

STANDARD OF REVIEW ...............................................................16

ARGUMENT.................................................................................16

I.    The District Court Erred in Dismissing Plaintiffs' Fourth
    Amendment Claims ...........................................................16

    A.    The Fourth Amendment Requires That Seizures Last
           No Longer Than Reasonably Necessary for the
           Government To Effect Its Legitimate Interests in the
           Seized Property ..............................................................18

    B.    The District Court Erred in Concluding That the Fourth
           Amendment Governs the Duration of Seizures Only
           When Police Investigatory Activity Prolongs Them.........................27

C.    The District Court's Decision Is at Odds with Historical
Practice ............................................................................34

D.    Fourth Amendment Jurisprudence Regarding Seizures of
Persons Further Undermines the District Court's Distinction...........36

E.    The Non-Binding Authority on Which the District
Court Relied Is Unpersuasive...........................................................40

II.    The District Court's Incorrect Fourth Amendment Analysis
Fatally Infected Its Holding on Municipal Liability ....................................51

III.    Reversal of the Fourth Amendment Claims Requires
Vacatur of the Decisions To Decline Supplemental
Jurisdiction and Deny Class Certification ...................................................53

CONCLUSION ........................................................................................................54

CERTIFICATE OF WORD COUNT.....................................................................56

# TABLE OF AUTHORITIES

## Cases

*Altman v. City of High Point*,
  330 F.3d 194 (4th Cir. 2003)...........................................................................34

*Avila v. Dailey*,
  246 F. Supp. 3d 347 (D.D.C. 2017).................................................................20

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ......................................................................16

*Barnett v. MacArthur*,
  956 F.3d 1291 (11th Cir. 2020).................................................................38, 39

*Bennett v. Dutchess County*,
  832 F. App'x 58 (2d Cir. 2020).......................................................................46

*Brewster v. Beck*,
  859 F.3d 1194 (9th Cir. 2017)........................................1, 18, 23, 27, 30, 31, 38

*California v. Hodari D.*,
  499 U.S. 621 (1991)........................................................................................38

*Cannon v. District of Columbia*,
  717 F.3d 200 (D.C. Cir. 2013) ..................................................................16, 54

*Cannon v. District of Columbia*,
  873 F. Supp. 2d 272 (D.D.C. 2012).................................................................53

*Case v. Eslinger*,
  555 F.3d 1317 (11th Cir. 2009).......................................................................46

*Clap v. Bell*,
  4 Mass. 99 (1808) ...........................................................................................36

*County of Riverside v. McLaughlin*,
  500 U.S. 44 (1991)..........................................................................................53

*Authorities upon which we chiefly rely are marked with asterisks.*

iv

*Denault v. Ahern*,
   857 F.3d 76 (1st Cir. 2017) .............................................................47

*English v. District of Columbia*,
   717 F.3d 968 (D.C. Cir. 2013) ......................................................16

*Fox v. Van Oosterum*,
   176 F.3d 342 (6th Cir. 1999)....................................................44, 45

*Gilmore v. City of Minneapolis*,
   837 F.3d 827 (8th Cir. 2016)..........................................................45

*Hurd v. District of Columbia*,
   997 F.3d 332 (D.C. Cir. 2021) .....................................................51

*Hurd v. District of Columbia*,
   864 F.3d 671 (D.C. Cir. 2017) ................................................16, 52

*Illinois v. Caballes*,
   543 U.S. 405 (2005)......................................................................39

*Johnson v. Edson*,
   1827 WL 1386 (Vt. 1827)..............................................................36

*Lee v. City of Chicago*,
   330 F.3d 456 (7th Cir. 2003)...................................... 44, 45, 48, 49

*\*Lin v. District of Columbia*,
   2022 WL 4007900 (D.C. Cir. Sept. 2, 2022) ......................37, 38, 39

*Manuel v. City of Joliet*,
   580 U.S. 357 (2017).......................................................................36

*Matter of the Search of Twenty-Six (26) Digital Devices &*
   *Mobile Device Extractions*,
   2022 WL 998896 (D.D.C. Mar. 14, 2022) ....................................43

*Mom's Inc. v. Willman*,
   109 F. App'x 629 (4th Cir. 2004)...................................................19

*Moya v. United States*,
   761 F.2d 322 (7th Cir. 1984)....................................................25, 48

*Rodriguez v. United States*,
 575 U.S. 348 (2015) ................................................................37

*\*Segura v. United States*,
 468 U.S. 796 (1984) ....................................... 2, 20, 22, 23, 24, 45

*Shaul v. Cherry Valley-Springfield Central School District*, |
 363 F.3d 177 (2d Cir. 2004) .............................................46

*Smith v. District of Columbia*,
 387 F. Supp. 3d 8 (D.D.C. 2019) ...............................19, 23

*Snider v. Lincoln County Board of County Commissioners*,
 313 F. App'x 85 (10th Cir. 2008) ....................................46

*\*Soldal v. Cook County*,
 506 U.S. 56 (1992) ...............................3, 4, 18, 32, 33, 34, 50

*Tate v. District of Columbia*,
 627 F.3d 904 (D.C. Cir. 2010) ........................................38

*\*United States v. Bumphus*,
 227 A.3d 559 (D.C. 2020) ..........................................25, 42

*United States v. Burgard*,
 675 F.3d 1029 (7th Cir. 2012) ....................................48, 49

*United States v. Chadwick*,
 433 U.S. 1 (1977) ..............................................................40

*\*United States v. Christie*,
 717 F.3d 1156 (10th Cir. 2013) ...........................25, 27, 43

*United States v. Howard*,
 991 F.2d 195 (5th Cir. 1993) ..........................................25

*\*United States v. Jacobsen*,
 466 U.S. 109 (1984) ........................ 2, 13, 20, 21, 22, 28, 29, 31, 39, 45, 46

*United States v. Jakobetz*,
 955 F.2d 786 (2d Cir. 1992) ...........................................47

*United States v. James Daniel Good Real Property*,
 510 U.S. 43 (1993)......................................................................46, 50

*United States v. Mays*,
 993 F.3d 607 (8th Cir. 2021)......................................................25

*United States v. Mitchell*,
 565 F.3d 1347 (11th Cir. 2009)..............................................25, 52

*\*United States v. Place*,
 462 U.S. 696 (1983).............................................2, 13, 20, 22, 23, 28, 39, 40

*United States v. Pratt*,
 915 F.3d 266 (4th Cir. 2019)..................................................25, 42

*United States v. Respress*,
 9 F.3d 483 (6th Cir. 1993)........................................................25

*United States v. Smith*,
 967 F.3d 198 (2d Cir. 2020).........................................24, 26, 43, 52

*United States v. Song Ja Cha*,
 597 F.3d 995 (9th Cir. 2010).....................................................25

*United States v. Sparks*,
 806 F.3d 1323 (11th Cir. 2015).............................................26, 43

*United States v. Stabile*,
 633 F.3d 219 (3d Cir. 2011)....................................................24, 42

*United States v. Veillette*,
 778 F.2d 899 (1st Cir. 1985) ......................................................24

*United States v. Wilkins*,
 538 F. Supp. 3d 49 (D.D.C. 2021) .............................................25

*Wyoming v. Houghton*,
 526 U.S. 295 (1999)...................................................................34

## Statutes

28 U.S.C. § 1291 ...................................................................................5

28 U.S.C. § 1331 ...................................................................................4

28 U.S.C. § 1343 ...................................................................................4

28 U.S.C. § 1367 ..............................................................................4, 53

42 U.S.C. § 1983 ...................................................................................4

## Other Authorities

Akhil R. Amar, *Terry and Fourth Amendment First Principles*,
    51 St. John's L. Rev. 1097 (1998)....................................................38

3 William Blackstone, *Commentaries on the Laws of England* (1768)................35

Maureen E. Brady, *The Lost "Effects" of the Fourth Amendment:*
    *Giving Personal Property Due Protection*,
    125 Yale L.J. 946 (2016) ...............................................................35

D.C. Metro. Police Dep't Special Order 15-08, Cell Phone Recovery Process §
    III.C (Apr. 14, 2015) ......................................................................6

Aziz Z. Huq, *How the Fourth Amendment and the Separation of*
    *Powers Rise (and Fall) Together*,
    83 U. Chi. L. Rev. 139 (2016).........................................................35

Richard H. Seamon, *Separation of Powers and the Separate*
    *Treatment of Contract Claims Against the Federal Government*
    *for Specific Performance*,
    43 Vill. L. Rev. 155 (1998) .............................................................35

# GLOSSARY

| | |
|---|---|
| *Cameron* Plaintiffs | Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster |
| ECF | Electronic Case Filing docket number |
| JA | Joint Appendix |
| MPD | District of Columbia Metropolitan Police Department |
| MTD Opp'n | Opposition to Motion To Dismiss |
| USAO | United States Attorney's Office for the District of Columbia |

# INTRODUCTION

These appeals concern whether a lawfully-initiated seizure of property violates the Fourth Amendment if it lasts longer than reasonably necessary for the government to complete its legitimate objectives with the seized property. Here, the District of Columbia Metropolitan Police Department (MPD), having lawfully seized Plaintiffs' cell phones incident to arrest, lawfully retained the phones while Plaintiffs were in custody. But once Plaintiffs were released (which occurred the next day or the day after that), that justification for the seizure expired, and the Fourth Amendment required MPD to either "cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). Nonetheless, MPD kept each Plaintiff's phone for over nine months, even though any conceivable justification for holding each phone expired far earlier: Prosecutors did not charge any of the Plaintiffs with a crime; MPD had no reason to consider the phones stolen; and if MPD intended to search the phones for evidence, it had the capacity to obtain a warrant and extract any relevant data within days. Plaintiffs sought both damages and an order to return the phones that MPD retained.

In dismissing these cases on the pleadings, the district court did not assess the reasonableness of the government's conduct (which the District has not defended). Instead, the court held that the Fourth Amendment did not apply to Plaintiffs' claims at all. The court appears to have concluded that the Fourth Amendment requires that

police complete *investigatory activities* within a reasonable time but otherwise imposes no constraints on when a lawfully-initiated seizure must end. The Ninth Circuit, the Fourth Circuit, and several district court judges in this jurisdiction have rejected that cramped reading and adopted a more consistent and principled rule: after the government's legitimate justifications for keeping seized property end, extending the seizure further violates the Fourth Amendment, whether the government is doing so for investigatory purposes or some other reason.

The latter rule is the correct one. It follows from the Supreme Court's decisions in *United States v. Place*, 462 U.S. 696 (1983), *United States v. Jacobsen*, 466 U.S. 109 (1984), and *Segura v. United States*, 468 U.S. 796 (1984)—three Supreme Court decisions that recognize that a seizure must be reasonable not only at its inception but also in its duration, and that a seizure becomes unreasonable in its duration when it lasts beyond the point when "the nature and quality of the intrusion on the individual's Fourth Amendment interests" outweigh "the governmental interests alleged to justify the intrusion." *Jacobsen*, 466 U.S. at 125 (quoting *Place*, 462 U.S. at 703; internal quotation marks omitted).

Although *Place*, *Jacobsen*, and *Segura* involved police officers extending seizures for investigatory purposes, their principles are not limited to their facts. The Supreme Court has not endorsed such a limitation, and the logic behind the principles shows that they cannot be so constrained. The reason that the Fourth

Amendment bars seizures from lasting beyond their reasonable duration is to protect property owners' interests in regaining lawfully-seized items. As the district court appeared to recognize, a seizure can unreasonably infringe an owner's possessory interests, and violate the Fourth Amendment, when the police extend it longer than reasonably necessary to secure a warrant and search the seized item. What the district court failed to see is that a seizure can *also* unreasonably intrude on these same possessory interests, and violate the Fourth Amendment (and indeed may be even more egregious), when officers who lack an investigatory purpose hold onto lawfully-seized property after they no longer have any legitimate justification for doing so—whether acting on a whim, for some other reason wholly divorced from an investigation, or for no reason at all. In either scenario, the impact on the owners' possessory interests is the same.

The requirement that seizures not last beyond their reasonable duration existed in Founding-era common law, which informs the scope of the Fourth Amendment. It also applies in the analogous context of seizures of persons: prior to a criminal conviction, the Fourth Amendment forbids the government from detaining individuals longer than reasonably necessary to carry out its objectives, whether the delay arises from investigatory purposes or not.

In requiring Plaintiffs to show an ongoing investigation to state a Fourth Amendment claim, the district court adopted an approach in deep tension not only

3

with the authorities discussed above but also with *Soldal v. Cook County*, 506 U.S. 56 (1992). There, the Supreme Court held that the Fourth Amendment applies to the initiation of a seizure regardless of the purpose of the seizure, and explicitly rejected the view that the Fourth Amendment applies only when a seizure is associated with a search or some other investigatory activity. *Id.* at 68. The district court ignored the lesson of *Soldal* by circumscribing the Fourth Amendment's applicability based on the government's reason for extending the seizure.

The district court relied on several non-binding cases, but those decisions are not persuasive because they are devoid of significant analysis and/or hold that the Fourth Amendment never governs the duration of seizures initiated on probable cause—a rule that directly conflicts with Supreme Court precedent.

Finally, because the district court's municipal liability analysis, denial of supplemental jurisdiction over Plaintiffs' D.C.-law claims, and denial of the *Cameron* class certification motion as moot, all relied on the court's incorrect Fourth Amendment ruling, these rulings were also erroneous.

The dismissal of Plaintiffs' claims in both cases should be reversed.

## JURISDICTION

The district court had jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331 and § 1343(a)(3) and over Plaintiffs' common-law claims under 28 U.S.C. § 1367 because they formed part of the same case or controversy.

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered final judgments against all Plaintiffs in both cases on August 29, 2022. JA152, JA157. All Plaintiffs timely noticed appeals on September 28, 2022. JA158-60.

## ISSUE PRESENTED

Plaintiffs' cell phones were lawfully seized incident to Plaintiffs' arrest but held past the point when the government's legitimate interests in the seized phones expired. Did the Fourth Amendment require that these seizures be reasonable not only in their inception but also in their duration?

## STATEMENT OF THE CASE

### A.    MPD Seizes the *Cameron* Plaintiffs' Cell Phones and Retains Them for Over Nine Months

On the evening of August 13, 2020, Alexander Cameron, Benjamin Tan, Destiny Robinson, Jonah Angeles, and Jake Oster (collectively the "*Cameron* Plaintiffs") arrived at Malcolm X Park to attend a protest against racism in policing as part of the movement following the killings of George Floyd and Breonna Taylor. JA15, JA19. The *Cameron* Plaintiffs and other protestors marched through the Adams Morgan neighborhood until around 10:45 pm, when MPD officers charged, encircled, and arrested a group of about 40 protestors, including the *Cameron* Plaintiffs. JA19. The officers seized all of the individuals' cell phones and other property and transported the individuals to detention facilities, holding them there

5

for up to 36 hours. *Id.* The United States Attorney's Office for the District of Columbia (USAO) declined to file charges against any of the *Cameron* Plaintiffs or the other people arrested with them. *Id.*

Upon releasing the detained individuals, MPD returned the *Cameron* Plaintiffs' other property but retained their cell phones, as well as the phones belonging to most of the people arrested with them. JA19-20. On August 17, 2020, attorney Thomas Healy emailed the USAO on behalf of the *Cameron* Plaintiffs and other arrestees asking for the phones back. JA20. An Assistant United States Attorney responded that because the USAO had declined to press charges, the protestors would need to contact MPD. *Id.* Mr. Healy did so multiple times. *Id.* Finally, on August 27, 2020, two weeks after the arrest, MPD Detective Nicole Copeland emailed him that "[m]embers of the Criminal Investigations Division are actively investigating this incident. Evidence recovered from this incident, which may or may not include cell phones, are being reviewed and as such Search Warrants may be presented to the United States Attorney's Office." *Id.*

MPD's Special Order on cell phone search and seizure requires officers with probable cause to believe that cell phones contain evidence to apply for warrants to search them within 48 hours of acquisition. *Id.* (citing D.C. Metro. Police Dep't, Special Order 15-08, *Cell Phone Recovery Process* § III.C (Apr. 14, 2015) (JA112-13)). When MPD acquires a warrant to search a cell phone, it "has access to

technology known as 'Cellebrite Kiosks,' which generally can extract data from a cell phone in about 30 minutes without damaging the phone or requiring the cell phone's continued retention for authentication purposes." JA21.

Yet Detective Copeland's email indicated that two weeks after the seizure, MPD had not sought search warrants for the phones. And even if MPD had obtained warrants, it would have had no reason to hold the phones after using the Cellebrite Kiosks to extract any relevant data. *Id.* Although the *Cameron* Plaintiffs "made numerous" attempts to regain their phones in the following months, MPD continued to retain them. *Id.*

Plaintiff Cameron had to wait over 280 days after his release to regain his phone. JA22. Plaintiff Tan had to wait more than 310 days. *Id.* As of the date the *Cameron* Plaintiffs filed their lawsuit, MPD still had the phones of Plaintiffs Robinson, Angeles, and Oster—more than a year and two months after MPD seized the phones. JA23. (Their phones were eventually returned.)

Each of the approximately 37 people whose phones MPD refused to return soon after their release from custody purchased a new device. *Id.* Some lost photographs, documents, passwords, and text message histories. *Id.* Some had contracts requiring them to continue paying fees even though they no longer possessed their devices. *Id.* Several endured anxiety that MPD was collecting

information from their devices or monitoring their activities. JA23-24. And at least one person lost access to his primary email account. JA24.

## B.   MPD Seizes Mr. Asinor's Cell Phone and Retains It for Over Eleven Months

Shortly after midnight on August 31, 2020, photojournalist Oyoma Asinor was covering a protest against police racism when MPD officers arrested him even though he was not violating any laws. JA47, JA53. The officers seized his property, including his camera and cell phone, and detained him overnight. JA53. Upon releasing Mr. Asinor the next day, police informed him that he would not face charges, but that MPD was retaining his phone and camera as evidence. *Id.*

Mr. Asinor contacted multiple MPD officers as well as the USAO asking for his property back, without success. *Id.* Finally, on August 3, 2021, over eleven months after the seizure, MPD returned the property in response to a request from his lawyers. JA54. In the interim, Mr. Asinor had to purchase a new camera, a new cell phone, a new SIM card, and other cell phone accessories. JA61. He also lost access to text messages, photographs, call logs, and notes. *Id.*

## C.   The District's Custom of Unreasonably Retaining Cell Phones

The District's prolonged seizure of Plaintiffs' phones arose from a custom of "retaining cell phones seized from arrestees, where officers have no basis to believe the cell phone constitutes physical evidence of a crime or contains contraband, for

longer than is reasonably necessary for any legitimate law enforcement purpose." JA25, JA55.

For example, in October 2015, officers seized a phone from a suspect and retained it until October 2019, holding it for four years after the seizure, and a year and a half after charges against the individual were dismissed, despite the individual's requests for the phone's return. JA28, JA56. In February 2020, MPD seized a cell phone from a robbery suspect and held it for 15 months after the individual pleaded guilty, even though the phone had no evidentiary value and the individual asked for its return. JA27, JA55. And in January 2017, when MPD officers arrested more than 200 Inauguration Day protestors, MPD seized cell phones from nearly all of the arrestees and retained them for at least eight months and in many cases far longer, even though many of the arrestees asked for their phones back and MPD had the capacity to extract any data relevant to the charges (most of which were dismissed) far sooner. JA56-57, JA25-26.

Excluding the seizures at issue in these appeals, the complaints here document 206 instances between January 2017 and the filing of the first of these lawsuits where MPD retained a mobile device for at least eight months and another case where MPD retained a cell phone for over four months—all without justification for doing so. JA25-28, JA55-58. MPD fails to return seized phones so frequently that it has a "large plastic bin" filled with cell phones it seized but never returned. JA57, JA26.

9

In 2016, *The Atlantic* wrote an article about MPD's routine practice of retaining seized cell phones. JA28-29, JA58. A 2019 Office of Police Complaints report outlined various ways MPD officers failed to comply with departmental property policies. JA28-29, JA58. And D.C. Public Defender Service attorneys and defense attorneys appointed under the Criminal Justice Act report that unreasonably extended seizures of the type at issue here "occur regularly." JA58.

As demonstrated by the widespread, persistent nature of the practice, "MPD leadership has tolerated this [c]ustom and the District has knowingly failed to take any meaningful actions to prevent the unlawful retention of arrestees' cell phones." JA29, JA58.

## D.    Procedural History

In November 2021, the *Cameron* Plaintiffs sued the District alleging that, by holding their phones longer than reasonably necessary to effect its legitimate governmental objectives, the District violated the Fourth Amendment. JA35-37. They also asserted a common-law conversion claim and a Fifth Amendment procedural due process claim. JA37-39. They sued on behalf of themselves and two putative classes: a damages class composed of individuals arrested at the same protest whose cell phones MPD unreasonably retained, and an injunctive class consisting of the subset of people in the damages class whose phones MPD still held

as of the filing of the complaint. JA31. The *Cameron* Plaintiffs filed a motion for class certification one day after filing their complaint. JA11-12.

Mr. Asinor's operative complaint (his Second Amended Complaint) alleged that the District violated the Fourth Amendment by holding his phone (and camera) longer than reasonably necessary to achieve its legitimate governmental objectives. JA66-67. The complaint also asserted a common-law conversion claim and a Fifth Amendment procedural due process claim. JA67-68. Additionally, the complaint asserted D.C.-law claims against the District and individual MPD officers arising from force used against him and co-plaintiff Bryan Dozier, also a photojournalist, while they were covering a protest the night before MPD seized Mr. Asinor's phone. JA62-67.

The District moved to dismiss all claims in *Cameron*, and the defendants in *Asinor* moved to dismiss Mr. Asinor's Fourth and Fifth Amendment claims along with several of the D.C.-law claims. With respect to the Fourth Amendment claims, neither motion argued that the duration of the seizure was reasonable. Instead, each motion contended that the Fourth Amendment simply does not apply to claims alleging that a lawfully-initiated seizure was unreasonable in its duration.

In August 2022, the district court dismissed both complaints, holding that "prolonged retention of lawfully seized property does not implicate the Fourth Amendment's protection against unreasonable seizures." JA131 (*Cameron*), JA154

11

(*Asinor*, incorporating *Cameron* opinion by reference). The court acknowledged cases concluding that a Fourth Amendment violation can arise when police hold property longer than reasonably necessary to obtain a warrant to search it. JA135. Although the court did not clearly explain how these cases meshed with its seemingly categorical holding, it appeared to view them as a limited exception to the general rule; thus, according to the court, the Fourth Amendment bars police from unreasonably extending the duration of a seizure to search or investigate the seized property, but imposes no limits on the duration of a seizure extended for other reasons. *See* JA134-35.

The district court then concluded that Plaintiffs did not fall within the limited scope it identified for the Fourth Amendment, *see id.*, and that even if the District did extend the seizure of some Plaintiffs' phones for investigatory purposes, Plaintiffs' municipal liability theory failed because their allegations discussing examples to show a municipal custom did not show that these examples involved delays *to obtain a warrant*. JA138. The court went on to dismiss Plaintiffs' Fifth Amendment claims and, with the federal claims eliminated, declined supplemental jurisdiction over the D.C.-law claims. JA150-51 (*Cameron*), JA155-56 (*Asinor*). The court denied the *Cameron* Plaintiffs' class certification motion as moot. JA151.

The *Cameron* and *Asinor* plaintiffs timely appealed the dismissal of their D.C.-law claims and Fourth Amendment claims.

12

## SUMMARY OF ARGUMENT

**1.** The Ninth Circuit, Fourth Circuit, and district judges in this jurisdiction have held that a Fourth Amendment violation occurs when officers retain lawfully-seized property after the justification for doing so expires. These cases rest on the Supreme Court's decisions in *Place*, *Jacobsen*, and *Segura*, which established two principles central to this appeal: First, the Fourth Amendment requires reasonableness in the manner of execution of a lawfully-initiated seizure, including its duration. Second, determining when the duration of a seizure (or other aspects of its execution) becomes unreasonable requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Jacobsen*, 466 U.S. at 125 (quoting *Place*, 462 U.S. at 703). If the seizure lasts beyond the point when the former outweighs the latter—i.e., beyond the moment when the owner's interest in regaining the property outweighs the government's interest in retaining it—the duration of the seizure is unreasonable, and a Fourth Amendment violation has occurred.

Such a violation can happen in a variety of contexts. As the Ninth Circuit, Fourth Circuit, and several judges in this district have held, a violation occurs when the government's initial justification for the seizure expires and it retains the property without acquiring a new one. Additionally, as every circuit to consider the

issue has recognized, a seizure can become unreasonable in its duration when the government intends to seek a warrant to search the seized item but takes an unreasonable amount of time to do so. In either case, the seizure unreasonably infringes the owner's possessory interest in the seized property—which is the reason underlying the Fourth Amendment's applicability to a seizure's duration in the first place.

The district court appears to have concluded that the Fourth Amendment applies to a seizure's duration only in the scenarios like the second one: where police take unreasonable time to *investigate* the seized property. That interpretation conflicts not only with the logic of *Place*, *Jacobsen*, and *Segura*, but also with *Soldal*, where the Supreme Court expressly held that the Fourth Amendment's applicability to seizures does not depend on whether a search or investigatory action occurred or even was contemplated. Further, binding precedents concerning seizures of persons—which the Supreme Court looks to in cases involving seizures of property—also establish that seizures must end when their justification does.

Although some opinions from other circuits have expressed the view that the Fourth Amendment does not apply to certain types of challenges to the duration of lawfully-initiated seizures, none of those opinions addresses *Segura* or meaningfully engage with *Jacobsen*; few cite *Place*; and these circuit opinions' broad pronouncements about the scope of the Fourth Amendment conflict with other

14

opinions in these same circuits holding the Fourth Amendment applicable to seizures extended by a tardy warrant application. Cases that properly engage with Supreme Court precedent hold the Fourth Amendment applicable to seizures that continue beyond their justification, regardless of why they are prolonged.

**2.** The district court concluded that D.C. could face liability for Plaintiffs' injuries only if Plaintiffs plausibly alleged that the District had a custom or policy of unreasonably retaining individuals' cell phones *for the purpose of deciding whether to obtain a warrant to search them*. That holding is erroneous because it rests on the same flawed distinction the court used to dispose of the underlying constitutional claim. The district court's municipal liability analysis contains a second error that is independently fatal: it concluded that the examples Plaintiffs cited to demonstrate a municipal custom did not reflect Fourth Amendment violations because they might have involved "simple negligence." JA139. But officers' intent is irrelevant to the question whether a seizure violates the Fourth Amendment by lasting longer than reasonably necessary for the government to pursue its objectives. In any event, granting Plaintiffs the benefit of favorable inferences, as is required at the pleading stage, the complaints plausibly alleged a District custom of *intentionally* extending seizures longer than reasonably necessary for any legitimate governmental goal.

**3.** Because the district court declined supplemental jurisdiction over Plaintiffs' D.C.-law claims based at least in part on its erroneous dismissal of their

federal claims, the court's supplemental jurisdiction rulings should also be vacated. The district court's denial of the *Cameron* class certification motion as moot was, similarly, predicated on its dismissal of the merits and therefore should also be vacated.

## STANDARD OF REVIEW

This Court reviews a Rule 12(b)(6) dismissal de novo. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1128 (D.C. Cir. 2015). On a motion to dismiss, a court must accept as true all facts plausibly pleaded in the complaint, drawing all reasonable inferences in plaintiffs' favor. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

A decision not to exercise supplemental jurisdiction is reviewed for abuse of discretion. *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013). Where a court declines supplemental jurisdiction based in whole or in part on its dismissal of all federal claims from the case, and any of the federal claims is subsequently reinstated, the appropriate course is to vacate the decision declining jurisdiction. *Cannon v. District of Columbia*, 717 F.3d 200, 208-09 (D.C. Cir. 2013).

## ARGUMENT

## I.    The District Court Erred in Dismissing Plaintiffs' Fourth Amendment Claims.

This appeal concerns the threshold question whether the Fourth Amendment applies to the claims asserted here: that the government held Plaintiffs' lawfully-

16

seized property longer than reasonably necessary to pursue its legitimate interests in the property. Whether the District held Plaintiffs' cell phones beyond that point here—i.e., whether the duration of the seizure was reasonable—is not at issue, as the Defendants did not defend the reasonableness of their conduct below and the district court did not consider that question.

Several courts have recognized that the Fourth Amendment applies to a claim that a lawfully-initiated seizure was unreasonably prolonged, and that such a seizure violates the Fourth Amendment if it persists after its justification expires. These cases rest on the Supreme Court's decisions in *Place*, *Jacobsen*, and *Segura*, which establish principles that guide the way to the proper resolution here.

The district court appears to have concluded that the Fourth Amendment requires officers to complete active investigations into seized property within a reasonable time but otherwise says nothing about a seizure's length. In its view, the Fourth Amendment could be violated where police wait a few weeks to obtain a warrant to search a seized phone, but the Fourth Amendment does not apply where the government holds a phone for months as leverage to get a witness to testify at trial, or steals it, maliciously discards it, or simply forgets to give it back. This distinction makes no sense, as the reason for the Fourth Amendment's protection against unreasonably extended seizures—to safeguard the owner's possessory interests in regaining the seized property—is just as applicable in the latter set of

scenarios. The district court's distinction betrays the Supreme Court's decisions in *Place*, *Jacobsen*, and *Segura* as well as *Soldal*, which teaches that the Fourth Amendment's applicability depends on "the intrusion on the people's security from governmental interference," not the reason that intrusion occurred, 506 U.S. at 69. The district court's opinion also conflicts with history and with the approach adopted by this Court and the Supreme Court in cases involving seizures of persons. And the district court's reliance on out-of-circuit decisions that also fail to grapple with these cases cannot justify its departure from binding precedent.

### A. The Fourth Amendment Requires That Seizures Last No Longer Than Reasonably Necessary for the Government To Effect Its Legitimate Interests in the Seized Property.

Where police extend lawfully-initiated property seizures beyond the time reasonably necessary for the government to pursue its legitimate interests in the seized items, they violate the Fourth Amendment. As Judge Kozinski explained for the Ninth Circuit, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

Courts have applied this rule in a variety of contexts. In *Brewster*, police seized and impounded a car driven by an unlicensed driver but, relying on a state statute requiring police to hold cars seized in these circumstances for 30 days,

18

refused to give the car back when the owner (who was not the driver) arrived with her license. *Id.* at 1195. The Ninth Circuit held that, although the initial impoundment of the vehicle was lawful, the police violated the Fourth Amendment by refusing to give the car back once the owner presented her license and "the exigency that justified the seizure vanished." *Id.* at 1196. The Fourth Circuit similarly held that, regardless of whether officers acted lawfully in initiating a seizure of a person's watch, they violated the Fourth Amendment by stealing it. *Mom's Inc. v. Willman*, 109 F. App'x 629, 637 (4th Cir. 2004) (per curiam). Because law enforcement does not have a legitimate interest in stealing property, "theft by a police officer extends a seizure beyond its lawful duration." *Id.*

In this jurisdiction, one district judge held that a group of plaintiffs stated a Fourth Amendment claim for MPD's retention of lawfully-seized firearms after prosecutors dismissed charges against the owners. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019). "[T]he Fourth Amendment permits seizures only for as long as necessary," the court explained; consequently, "[o]nce a justification loses force, the government must cease the seizure or come up with a new justification." *Id.* Another district judge similarly held that an officer who lawfully seized and searched a van violated the Fourth Amendment by retaining the van "as a bargaining chip to elicit information" from its owner—a rationale the court held failed to provide a "legitimate basis" for continuing to hold the van after the

19

search. *Avila v. Dailey*, 246 F. Supp. 3d 347, 355, 357 (D.D.C. 2017), *vacated in part on other grounds*, 2017 WL 9496067 (D.D.C. Aug. 1, 2017). Like the Ninth and Fourth Circuit decisions, these cases recognize that a seizure becomes unreasonable when it lasts beyond the time required for the government to pursue its legitimate aims.

These cases rest on the Supreme Court's decisions in *United States v. Place*, 462 U.S. 696 (1983); *United States v. Jacobsen*, 466 U.S. 109 (1984), and *Segura v. United States*, 468 U.S. 796 (1984), which together established two key principles. First, the Fourth Amendment governs the manner of executing a seizure—including its duration—not just its initiation. Second, the duration of a seizure becomes unreasonable when its interference with the owner's possessory interests outweighs the government's justification for retaining the seized property—a condition that is met when the government holds property longer than reasonably justified by its legitimate interests in the seized items.

The first principle has its origins in *Place*. There, police seized an airline passenger's luggage on reasonable suspicion that it contained drugs and held it for 90 minutes so a drug dog could arrive and sniff the bag. 462 U.S. at 699-701. The Court presumed that the initial decision to seize the luggage was lawful, *id.* at 699 n.1, but nonetheless held the seizure unreasonable based on its length, *id.* at 710.

20

The Supreme Court clarified *Place*'s significance in *Jacobsen*. The opinion in *Place* might have been read to suggest that the Fourth Amendment constrained the duration only of seizures initiated on reasonable suspicion, not those initiated on other grounds. In *Jacobsen*, however, the property owners conceded that law enforcement had probable cause—not merely reasonable suspicion—to seize their property. 466 U.S. at 121 n.20. The Court nonetheless invoked *Place* to explain why the legality of the initial seizure did not end the Fourth Amendment inquiry. *Id.* at 124. The Court clarified that its holding in *Place* set forth a broad rule: "as *Place* also holds, a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *Id.* And the Court went on to explicitly identify the "length" of a seizure as one way its manner could become unreasonable: "In *Place*, the Court held that while the initial seizure of luggage for the purpose of subjecting it to a 'dog sniff' test was reasonable, the seizure became unreasonable because its length unduly intruded upon constitutionally protected interests." *Id.* at 124 n.25. The Supreme Court's authoritative construction of *Place*'s holding in *Jacobsen* makes clear that *Place* does not speak only to seizures initiated on reasonable suspicion, but rather establishes a general rule that lawfully-initiated seizures must be reasonable in their manner of execution, including, as was at issue in *Place*, their duration.

21

Six Justices reaffirmed that principle in *Segura*. There, police officers entered an apartment and secured it from the inside for hours until they could obtain a warrant to search it. 468 U.S. at 801. All six Justices who opined on the question (three did not consider it, *id.* at 797 n.†) concluded that the Fourth Amendment applied to the length of the occupation, because "a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons." *Id.* at 812 (opinion of Burger, C.J., joined by O'Connor, J.); *accord id.* at 823 (Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ., dissenting) ("Even a seizure reasonable at its inception can become unreasonable because of its duration.").

These cases also recognized a second key principle: a seizure's duration becomes unreasonable when the intrusion on the property owner's Fourth Amendment interests lasts longer than reasonably justified by the government's legitimate objectives. To determine when a seizure becomes unreasonable in its manner of execution, including its duration, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Jacobsen*, 466 U.S. at 125 (quoting *Place*, 462 U.S. at 703). A seizure becomes unreasonable if it persists past the point at which the former outweighs the latter. Thus, in *Place*, the Court held the luggage seizure unreasonable because it hindered the passenger's

travels and the officers failed to "diligently pursue their investigation"—i.e., the length of the intrusion was not reasonably necessary for them to arrange the dog sniff. 462 U.S. at 709. Similarly, in *Segura*, four Justices concluded that the duration of the apartment occupation was unreasonable because there was "no contention that a period of 18-20 hours was even remotely necessary to procure a warrant," 468 U.S. at 823-24 (Stevens, J., dissenting), while two other Justices reached the opposite conclusion, in part on grounds that such a delay was "not uncommon" in a large city, *id.* at 812 (opinion of Burger, C.J.).

Federal courts have applied these principles in various contexts. *Brewster*, *Mom's Inc.*, *Smith*, and *Avila* invoked some combination of *Place*, *Jacobsen*, and *Segura* to hold that the Fourth Amendment requires reasonableness in the duration of a lawfully-initiated seizure of property, then applied the Court's balancing test to assess whether the duration of the seizure was reasonable. The rule adopted in these cases—that, when the government's initial justification for a seizure of property expires, it "must cease the seizure or secure a new justification," *Brewster*, 859 F.3d at 1197—is effectively just a specific application of that balancing test. These cases recognize that individuals have an interest in regaining the lawfully-seized, non-contraband property, *see, e.g.*, *Brewster*, 859 F.3d at 1196-97 (observing that a 30-day impound "is a meaningful interference with an individual's possessory interests in his property" (cleaned up)); *Smith*, 387 F. Supp. 3d at 25 (observing that years-

long retention of plaintiffs' firearms posed "significant intrusion on plaintiffs' possessory rights"); *cf. Segura*, 468 U.S. at 808 (opinion of Burger, C.J.) (stating that the Fourth Amendment safeguards individuals' "possessory interest" in the "use and possession" of their items), and that when police have no justification for holding the seized items, the individuals' interests necessarily outweigh the government's.

Courts have also applied *Place*, *Jacobsen*, and *Segura* to hold that police violate the Fourth Amendment by extending a seizure of property longer than reasonably necessary to secure a warrant to search the property. Indeed, the federal appellate courts in every geographic circuit except this one (which has not directly addressed the issue), along with the D.C. Court of Appeals and a district court in this jurisdiction, have invoked some combination of *Place*, *Segura*, and *Jacobsen* to conclude that the Fourth Amendment applies to such a challenge:

- *United States v. Veillette*, 778 F.2d 899, 903 & n.3 (1st Cir. 1985) (evaluating whether lawfully-initiated seizure violated Fourth Amendment based on its duration);

- *United States v. Smith*, 967 F.3d 198, 205, 213 (2d Cir. 2020) (holding that police violated Fourth Amendment by retaining lawfully-seized tablet for 31 days before seeking a warrant, and affirming that "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant" (cleaned up));

- *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011) (assessing whether initially lawful seizure violated the Fourth Amendment based on its duration);

24

- *United States v. Pratt*, 915 F.3d 266, 271, 272 (4th Cir. 2019) (holding "extended seizure" of cell phone violated Fourth Amendment even though seizure was lawfully initiated);

- *United States v. Howard*, 991 F.2d 195, 202 (5th Cir. 1993) (analyzing whether lawfully-initiated seizure violated Fourth Amendment based on its duration);

- *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) ("[E]ven with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable.");

- *Moya v. United States*, 761 F.2d 322, 325 n.1 (7th Cir. 1984) ("Even if the officers had probable cause to believe Moya's bag contained contraband, there would be a question whether the three hour detention of the bag before seeking a search warrant was reasonable.");

- *United States v. Mays*, 993 F.3d 607, 616 (8th Cir. 2021) (assessing whether duration of lawfully-initiated seizure violated Fourth Amendment);

- *United States v. Song Ja Cha*, 597 F.3d 995, 1000 (9th Cir. 2010) (holding lawfully-initiated seizure unconstitutional because "the duration of this seizure was too long under the Fourth Amendment");

- *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.) (assessing whether search of computer was the fruit of an unlawfully-prolonged seizure arising from extended delay in securing a warrant);

- *United States v. Mitchell*, 565 F.3d 1347, 1349, 1353 (11th Cir. 2009) (holding 21-day delay between lawfully-initiated seizure and acquisition of warrant was unreasonable under the Fourth Amendment);

- *United States v. Wilkins*, 538 F. Supp. 3d 49, 90-96 (D.D.C. 2021) (holding that 15-month delay between seizure of defendant's phone and application for a search warrant required suppression of evidence obtained from the phone);

- *United States v. Bumphus*, 227 A.3d 559, 564, 568 (D.C. 2020) (holding that police officer, who, acting on probable cause, seized a car and a cell phone left inside it, violated Fourth Amendment by waiting four days to obtain a

25

warrant and search the vehicle, and affirming that "seizures that are reasonable at their inception may become unreasonable over time").

Decisions prohibiting police from unreasonably extending seizures of property to secure search warrants do so because they recognize that the Fourth Amendment protects individuals' possessory interests in regaining lawfully-seized property—the same interests at issue in cases like *Brewster* that arise outside the warrant setting. For instance, the Eleventh Circuit explained in *United States v. Sparks*:

> We demand expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable. Under those circumstances, the searched item must be returned promptly so the person with the possessory interest can continue to enjoy that interest.

806 F.3d 1323, 1340 (11th Cir. 2015), *overruled on other grounds, United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (en banc). The Second Circuit adopted this reasoning in full. *See Smith*, 967 F.3d at 205. And then-Judge Gorsuch, writing for the Tenth Circuit, invoked similar principles to explain why police cannot delay acquiring warrants: "What, after all, is 'reasonable' about police seizing an individual's property . . . and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence needed for

trial or is totally irrelevant to the investigation and should be returned to its rightful owner?" *Christie*, 717 F.3d at 1162.

Here, the application of the Fourth Amendment, read in light of the principles adopted by *Place*, *Jacobsen*, and *Segura*, and federal appellate cases interpreting those decisions, is straightforward. MPD lawfully seized Plaintiffs' cell phones incident to their arrests. MPD had a legitimate basis to retain the phones while Plaintiffs were in custody, but once they were released, that justification expired and MPD could retain the phones only if it secured a new justification. *See Brewster*, 859 F.3d at 1197. In its motions to dismiss, the District did not argue that it had a lawful justification for retaining Plaintiffs' phones for as long as it did. It argued only that the Fourth Amendment imposed no limit at all on how long it could keep them. *Place*, *Jacobsen*, and *Segura*, and lower court decisions such as *Brewster* and *Christie*, refute that contention. The Fourth Amendment applies to these cases.

**B.    The District Court Erred in Concluding That the Fourth Amendment Governs the Duration of Seizures Only When Police Investigatory Activity Prolongs Them.**

The district court's alternative understanding of *Place*, *Jacobsen*, and *Segura* does not make sense even on its own terms. The district court recognized that Plaintiffs interpreted these cases to "establish that the Fourth Amendment regulates not only the initial seizure of property but also its duration." JA133-34. But the court then stated that those decisions "stand for an entirely different proposition," namely

27

"that an initial investigatory detention of property, even if valid at the start, can become unreasonable based on the manner of its *execution*, which may include the length of its duration." JA134. How is the second proposition "entirely different"— or different at all—from the first? The district court never explained. The court italicized a word in the phrase "manner of its execution," but did not explain how that changed the meaning of the rule, particularly as the court recognized Plaintiffs' key point: that manner "may include the length of its duration." *Id.*

Having apparently understood Plaintiffs' rule initially, the court then retreated from it, positing a distinction based on the purpose of the prolonged seizure: Plaintiffs' authorities, the district court stated, "largely involve application of the rule articulated in *Place* concerning the manner of executing a *search* of seized property." JA135 (emphasis added).

This purported distinction is puzzling, as *Place* itself held that the dog sniff that prolonged the seizure "did not constitute a 'search' within the meaning of the Fourth Amendment." 462 U.S. at 707. The Court reached a similar conclusion in *Jacobsen*. There, after holding lawful the initial seizure of a package containing powder, the Court concluded that to subject the powder to a field test, the police had to satisfy the Fourth Amendment's seizure clause because, by destroying a "trace amount" of the powder, the test "did affect [the owners'] possessory interests" in it. 466 U.S. at 124. The Court separately held that the field test did not constitute a

28

search under the Fourth Amendment. *Id.* Thus, as in *Place*, the Court applied the Fourth Amendment to an interference in owners' possessory interests in property occurring after police lawfully seized it, even though no search was involved. The district court would therefore have been demonstrably incorrect if it meant that *Place* and *Jacobsen* concerned the duration of seizures for the purpose of searches.

More likely, then, when the court described *Place* as concerning "the manner of executing a search of seized property," it used "search" in the colloquial sense, to refer to investigatory activity generally. Thus, the court appeared to understand *Place*, *Jacobsen*, and *Segura* to hold that lawfully-initiated seizures must be reasonable in duration *only* when the seizure is prolonged by police investigatory action, such as a dog sniff or deciding whether to seek a warrant. By contrast, in the court's view, when the seizure does not involve such investigatory activity, the Fourth Amendment does not govern its duration.[1]

The district court did not explain why the logic of *Place*, *Jacobsen*, and *Segura* applies only to seizures extended by investigations into the seized property and not seizures extended for other reasons—like the one in *Brewster*, where a state

---

[1] The *Cameron* Plaintiffs did allege that MPD extended the seizure of their phones to decide whether to seek a warrant to search them; the district court split off this aspect of the claims, assumed it stated a constitutional violation, and then dismissed it for failure to show municipal liability. JA136-40. Plaintiffs address this municipal liability analysis in Part II, below.

statute required officers to keep all impounded vehicles for 30 days even when the justification for holding the property expired earlier. *See* 859 F.3d at 1196. Nor did Defendants offer an explanation for this distinction in any of their briefs on the issue below.

Such a distinction makes no sense. As discussed in Part I.A, protecting individuals' interests in regaining seized property is the reason that the Fourth Amendment bars seizures from lasting longer than necessary. The degree to which a seizure intrudes on an owner's possessory interests is a function of its length, not the reason (or lack thereof) it was prolonged. Yet, under the district court's rule, seizures that impose *greater* intrusions on possessory interests could receive *less* Fourth Amendment protection. For instance, officers could violate the Fourth Amendment by holding a suitcase for a few minutes longer than reasonably necessary to find a dog to sniff it, but not if they hold a suitcase with no known evidentiary value for a year as "a bargaining chip" to get a witness to provide information. Similarly, a seizure of a cell phone could violate the Fourth Amendment if the police take a few weeks to decide whether to pursue a warrant to search it, but not if the police realize they lack probable cause to acquire a warrant and nonetheless hold the phone for months on the off chance that they receive a tip that supplies probable cause to secure a warrant to search it in the future.

Nothing in *Place*, *Jacobsen*, or *Segura* supports such bizarre results. Although the seizures in all three cases happened to be extended by investigatory activities (with the field test that destroyed the powder in *Jacobsen* extending the seizure permanently), the decisions do not limit their principles to their facts. Indeed, the decisions announced their principles using broad language that extends beyond their immediate circumstances. *See, e.g.*, *Jacobsen*, 466 U.S. at 124 ("[A]s *Place* also holds, a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'").

Accordingly, the Ninth Circuit, Fourth Circuit, and several judges in this district have all applied some combination of *Place*, *Jacobsen*, and *Segura* to require that seizures end when the government's justification expires, even when that justification is unrelated to an investigation into the seized property. *See* Part I.A above. Indeed, *Brewster* expressly recognizes that "[t]he Fourth Amendment is implicated by a delay in returning the [seized] property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual." 859 F.3d at 1197 (internal citations and quotation marks omitted). Although Plaintiffs cited *Brewster*, *Mom's Inc.*, *Smith*, and *Avila* in their briefing below, *see* Pls.' Opp'n to Defs.' Partial Mot. To Dismiss, *Asinor v. District of Columbia*, 1:21-

31

cv-02158 (D.D.C. Feb. 25, 2022), ECF 30 ("*Asinor* ECF 30 (MTD Opp'n)"), at 23, 24, 26 n.4; Pls.' Opp'n to Def.'s Mot. To Dismiss, *Cameron v. District of Columbia*, 1:21-cv-02908 (D.D.C. Jan. 28, 2022), ECF 22 ("*Cameron* ECF 22 (MTD Opp'n)"), at 9-10 & n.3, 13-14, the district court discussed none of them in its Fourth Amendment analysis; the court instead insisted that "every Circuit has held that the Fourth Amendment does not protect against the prolonged retention of lawfully seized property. Plaintiffs have not cited a single case that says otherwise." JA135.

In addition to deviating from the logic of *Place*, *Jacobsen*, and *Segura*, the district court's distinction is in deep tension with *Soldal v. Cook County*, 506 U.S. 56 (1992). There, the Supreme Court assessed whether the Fourth Amendment applied to police officers' role in helping a landlord remove the plaintiffs' mobile home from the landlord's property. *Id.* at 59. The Seventh Circuit concluded that the officers' conduct did not constitute a seizure because it did not occur in the course of a police search or other investigatory action. *Id.* at 68 & n.13. The Supreme Court unanimously disagreed, citing *Jacobsen* and *Place* to hold that the Fourth Amendment does not protect "only against seizures that are the outcome of a search," *id.* at 68, or other "law enforcement activities," *id.* at 68 n.13; *see also id.* at 68 (stating that Supreme Court precedent "hold[s] that seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place").

In distinguishing between seizures involving police investigations and all others, the district court here drew the same distinction that the Seventh Circuit drew in *Soldal*—which the Supreme Court rejected. Although *Soldal* involved the Fourth Amendment's applicability to the initiation of a seizure, not its duration, the rationale of *Soldal* applies equally here. *Soldal* reasoned that the Seventh Circuit's rule would yield the "anomalous" result that "the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." *Id.* at 69 (cleaned up). The district court's rule produces the same anomaly. On its logic, individuals could invoke the Fourth Amendment against police officers who lawfully seize their property to search it and hold it longer than reasonably necessary to do so, but could not invoke the Fourth Amendment when officers lawfully seize their property, decide *not* to search it (because they do not suspect the owner of a crime), and keep the property for just as long. This discrepancy makes no more sense here than it did in *Soldal*, which rejected such a balkanized approach to the Fourth Amendment. As the Court explained:

> [w]hat matters is the intrusion on the people's security from governmental interference. Therefore, the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken *to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all*.

*Id.* (emphasis added). Accordingly, the district court erred in rejecting Plaintiffs' claims for unduly prolonged seizures on the grounds that they were not undertaken

for the purpose of searching the property. "What matters is the intrusion on the people's security from governmental interference," *id.*, not the intrusion's purpose. Here, the prolonged seizure of Plaintiffs' cell phones unquestionably constituted a governmental intrusion into their possessory interests. The Fourth Amendment therefore applies.

### C.    The District Court's Decision Is at Odds with Historical Practice.

The common-law tradition reaffirms what recent Supreme Court precedent recognizes: a seizure cannot last longer than reasonably necessary to achieve the government's purposes. In determining the Fourth Amendment's applicability and scope, the Supreme Court "inquire[s] first whether the action was regarded as an unlawful search or seizure under common law when the Amendment was framed." *Wyoming v. Houghton*, 526 U.S. 295, 299 (1999); *see also Altman v. City of High Point*, 330 F.3d 194, 202 (4th Cir. 2003) (Luttig, J.) (determining that, when police kill a dog, it constitutes a seizure under the Fourth Amendment largely because the plaintiffs "clearly assert[ed] a right with an analog at common law, a fact which strongly suggests that, at least to this extent, dogs would have been protected as 'effects' within the meaning of the Fourth Amendment at common law").

The claim at issue here has "analogs" in the Founding-era common-law actions for detinue and trover. *See Altman*, 330 F.3d at 201-02 (looking to scope of trover to help define scope of Fourth Amendment). Blackstone explained that actions

34

for interference with personal property were available both when effects were unlawfully taken and when they were lawfully acquired but "unlawfully detained." Maureen E. Brady, *The Lost "Effects" of the Fourth Amendment: Giving Personal Property Due Protection*, 125 Yale L.J. 946, 992 (2016). Blackstone illustrated the second category of claims by way of example: "[I]f I lend a man a horse, and he afterwards refuses to restore it, this injury consists in the detaining, and not in the original taking, and the regular method for me to recover possession is by action of detinue." 3 Wm. Blackstone, *Commentaries on the Laws of England* 151 (1768). Blackstone went on to note that Founding-era plaintiffs often brought claims for unlawful property detention via a related type of action, trover. *See id.*

Founding-era common law permitted aggrieved individuals to bring such claims against law enforcement officials. "[S]eizures by federal revenue officials in the early republic were challenged in common-law forms of action such as trover, detinue, and assumpsit." Aziz Z. Huq, *How the Fourth Amendment and the Separation of Powers Rise (and Fall) Together*, 83 U. Chi. L. Rev. 139, 153 (2016); *accord* Richard H. Seamon, *Separation of Powers and the Separate Treatment of Contract Claims Against the Federal Government for Specific Performance*, 43 Vill. L. Rev. 155, 163-66 (1998). Indeed, on Professor Akhil Amar's account, such civil actions were "the anticipated remedial mechanism for Fourth Amendment violations." Huq, *supra*, 83 U. Chi. L. Rev. at 153.

Detinue and trover claims against law enforcement arose not only when property was wrongfully acquired, but also when officers retained property beyond their justification for doing so. For example, in 1808, the Supreme Judicial Court of Massachusetts concluded that when a sheriff holds property pending a legal dispute and then judgment is entered for the original possessor, the "sheriff can no longer retain the property" that he had lawfully seized pending adjudication. *Clap v. Bell*, 4 Mass. 99 (1808). The Supreme Court of Vermont agreed that when judgment is rendered for the original possessor in such a circumstance, the sheriff's limited property interest in lawfully-seized goods expires, and so "if he detains the chattels after demand is made, he is answerable in an action of trover." *Johnson v. Edson*, 1827 WL 1386, at *4 (Vt. 1827), *criticized on other grounds, Flanagan v. Hoyt*, 36 Vt. 565 (1864).

The viability at common law of claims like Plaintiffs' confirms that the Fourth Amendment covers them and is not restricted to seizures prolonged for investigative purposes.

## D. Fourth Amendment Jurisprudence Regarding Seizures of Persons Further Undermines the District Court's Distinction.

The district court's approach to seizures of property clashes with Fourth Amendment principles governing seizures of persons. In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court held that the Fourth Amendment governs

"the detention of suspects pending trial" and "drops out" only at trial. *Id.* at 369 n.8 (cleaned up).

The Fourth Amendment requires reasonableness throughout this period: the government must not only have reasonable grounds to initiate the detention, but also to continue it. Thus, the Supreme Court held in *Rodriguez v. United States*, 575 U.S. 348 (2015), that under the Fourth Amendment, "[a] seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* at 350-51 (cleaned up). This Court similarly observed in *Lin v. District of Columbia*, 2022 WL 4007900 (D.C. Cir. Sept. 2, 2022), that "a person 'must be released from arrest[] if previously established probable cause has dissipated'" based on new facts. *Id.* at *8 (quoting *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007), and citing cases from seven other circuits).

The Court applied that rule to hold that even though officers had probable cause when they first arrested the plaintiff, they violated the Fourth Amendment to the extent they detained her after further investigation dispelled their initial suspicions. *Id.* at *7, *10. These cases adopt the same rule that courts have applied in the seizure of property context: "[a] seizure is justified under the Fourth

Amendment only to the extent that the government's justification holds force." *Brewster*, 859 F.3d at 1195, 1197.[2]

The concern for preventing overlong detentions of persons has deep roots. For instance, "[i]n one of the landmark English cases that set the stage for the Fourth Amendment, the 1765 case of *Money v. Leach*, Lord Mansfield acknowledged that the four-day detention of printer Dryden Leach raised questions not only about the existence of 'probable cause or ground of suspicion' to arrest, but also about whether the official 'detained the plaintiff an unreasonable time.'" Akhil R. Amar, *Terry and Fourth Amendment First Principles*, 51 St. John's L. Rev. 1097, 1121 (1998).

Detaining someone pretrial longer than reasonably necessary for the government's legitimate purpose violates the Fourth Amendment no matter why the seizure is prolonged. For example, in *Barnett v. MacArthur*, 956 F.3d 1291 (11th Cir. 2020), a decision this Court cited approvingly in *Lin*, 2022 WL 4007900, at *8 n.6, the plaintiff was arrested based on (what the Eleventh Circuit assumed without deciding) was probable cause to believe that she was driving while intoxicated, 956

---

[2] This Court did not have the benefit of *Rodriguez*'s and *Manuel*'s guidance when it stated in dicta that a seizure exclusively entails "a taking possession." *Tate v. District of Columbia*, 627 F.3d 904, 912 (D.C. Cir. 2010) (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). The Court made that point in responding to the plaintiff's argument that the government's decision to sell her vehicle violated the Fourth Amendment because it was "disproportionate" to her misconduct (two outstanding traffic tickets). *Id.* The Court did not address any of the cases discussed previously or otherwise consider whether an unreasonably extended seizure offends the Fourth Amendment.

F.3d at 1297. The officers took her to the stationhouse, where she blew a 0.00 on the breathalyzer test; however, the police nonetheless held her for several hours pursuant to a departmental policy of detaining individuals for eight hours after a DUI arrest. *Id.* at 1299. The court held the detention unlawful, even though the seizure was legal at the outset, because it continued after its lawful basis had conclusively expired. *Id.* The fact that the seizure was extended because of a departmental policy, rather than a search or some other form of investigatory activity, was of no moment.

The Supreme Court has looked to cases involving seizures of persons when determining whether the Fourth Amendment's seizure clause governs an intrusion on possessory interests. *See, e.g.*, *Jacobsen*, 466 U.S. at 113 n.5 (deriving definition of a seizure of property from cases on seizures of persons); *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *Jacobsen*, a property seizure case, for the proposition that lawfully-initiated traffic stops of persons violate the Fourth Amendment if unreasonably prolonged). Although the inquiries are not identical in all respects, the Fourth Amendment's protections of property reflect the same core principles as its protections of persons.

*Place* is illustrative in this regard. The Court concluded that *Terry* principles govern seizures of property as much as seizures of persons, 462 U.S. at 706; and that Fourth Amendment restrictions on the length of an initially lawful seizure do not shut off when the seizure involves property rather than a person, *see id.* at 708; this

is so even though, in some cases, seizures of property may be less intrusive than seizures of persons, and that in turn can affect the acceptable duration, *see id.* at 706, 708. Thus, while a "reasonable" investigation of a person may require greater haste than a "reasonable" investigation of property, the underlying principle that officers must end the seizure when the justification expires persists across "persons, papers, and effects"—each of which is given equal billing in the Fourth Amendment's text. *See United States v. Chadwick*, 433 U.S. 1, 8 (1977) (observing that the Fourth Amendment "draws no distinctions among 'persons, houses, papers, and effects' in safeguarding against unreasonable searches and seizures"), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).

Thus, binding authority on seizures of persons and binding authority on seizures of property point the same way—precluding seizures that are unreasonable in duration regardless of what causes the unreasonable length. The district court's opinion conflicts with both lines of authority. Even though Plaintiffs cited *Manuel* and *Rodriguez* in their briefs, *see Cameron* ECF 22 (MTD Opp'n) 8-9, *Asinor* ECF 30 (MTD Opp'n) 21-22, the district court never discussed them.

### E.    The Non-Binding Authority on Which the District Court Relied Is Unpersuasive.

The Supreme Court's decisions in *Place*, *Segura*, *Jacobsen*, *Soldal*, *Manuel*, and *Rodriguez*, along with this Court's decision in *Lin*, point the way to the correct

resolution here: the Fourth Amendment applies to Plaintiffs' claims that the government seized their phones for longer than reasonably justified by its interests.

Opinions from other circuits in tension with those rulings cannot outweigh them. Moreover, even if this case came down to a battle of persuasive authority, this Court would not face a "chorus" of circuits supporting Defendants, as the district court suggested, JA136, but rather a choice between two lines of authority. On one side stand the cases from the Ninth Circuit, Fourth Circuit, and district courts in this circuit that, as discussed previously, hold that police violate the Fourth Amendment by holding lawfully-seized property after the government's legitimate justifications expire. Also on that side of the ledger are cases from every circuit to consider the issue holding that lawfully-initiated seizures can violate the Fourth Amendment when unduly prolonged for the purpose of obtaining a search warrant—a rule resting on grounds that apply equally when a seizure is prolonged for another reason. *See* Part I.A.

On the opposite side are several cases arising outside the warrant context holding that the Fourth Amendment regulates only the initiation of a seizure— discussed further below.

As an initial matter, the district court did not even perceive the competing lines of authority in part because, as noted, it simply ignored all the cases Plaintiffs

cited holding that the Fourth Amendment regulates a seizure's duration outside the warrant context. *See* Part I.B.

The district court also wrongly distinguished the cases involving property seizures extended by dilatory warrant applications. The court reasoned that these applied "the rule articulated in *Place* concerning the manner of executing a search of seized property." JA135. The district court's focus on searches not only misstates the scope and reasoning of *Place*, as discussed in Part I.B, but also ignores the reasoning of the delayed-warrant cases themselves, *see supra* pp. 24-27. Although the defendant in each case challenged the introduction of evidence from a search, the basis for the challenge was that the search was the fruit of a lawfully-initiated but unreasonably prolonged *seizure*. *See, e.g.*, *United States v. Bumphus*, 227 A.3d 559, 570 (D.C. 2020) (suppressing evidence because "the extended warrantless seizure was an integral part of the but-for causal chain of events leading to the recovery" of the evidence). To determine whether there was a Fourth Amendment violation, these decisions assessed the reasonableness of the *duration of the seizure*, not the search; accordingly, in balancing the government's justification against the owners' Fourth Amendment interests, the courts focused on owners' "possessory interest[s]," not their privacy interests. *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019); *see also, e.g.*, *United States v. Stabile*, 633 F.3d 219, 235-36 (3d Cir. 2011); *Bumphus*, 227 A.3d at 567-68.

The fact that the cited cases involved seizures extended in connection with searches does not mean that their logic is limited to that context. As discussed previously, courts require police to complete searches promptly "to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable." *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015), *overruled on other grounds, United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (en banc); *accord United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020); *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.). The Fourth Amendment interests safeguarded by the delayed-warrant cases, thus, are property owners' interests in regaining their property—which are equally infringed whether the government retains property because it slow-walks a warrant application or for another reason. As in its approach to *Place*, *Jacobsen*, and *Segura*, the district court incorrectly read the delayed-warrant cases as confined to their facts.

As for the decisions on which the district court relied, one is inapposite, and the rest are simply unpersuasive—both because they do not align with Supreme Court precedent and because they are insufficiently or poorly reasoned. The inapposite case is *Matter of the Search of Twenty-Six (26) Digital Devices & Mobile Device Extractions*, 2022 WL 998896, at *11 (D.D.C. Mar. 14, 2022). That case

43

addressed a question distinct from the one at issue here, namely: Does a warrant authorizing police to extract and search cell phone data permit the police to indefinitely retain *copies* of that lawfully-extracted data? *See id.* at *11-*12. Plaintiffs' claims here do not concern the prolonged retention of lawfully-copied information from their cell phones, but rather the retention of cell phones themselves.

Several decisions on which the district court relied did opine that the Fourth Amendment does not regulate prolonged seizures—but did so based on reasoning that conflicts with Supreme Court precedent. For instance, *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999), rejected a prolonged seizure claim because "[o]nce th[e] act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." Likewise, *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003), reasoned, "[o]nce an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable." If the Fourth Amendment stops regulating a seizure after the initial dispossession, as these cases say, then it cannot constrain the duration of a seizure or other intrusions on an owner's possessory interests in an item that occur after the police have acquired it. Yet *Jacobsen* concluded that the Fourth Amendment does just that (and read *Place* to hold the same). And six Justices agreed in *Segura* that "a seizure reasonable at its inception because based upon probable

44

cause may become unreasonable as a result of its duration." 468 U.S. at 812 (opinion of Burger, C.J., joined by O'Connor, J.); *accord id.* at 824 (Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ., dissenting).

The Sixth and Seventh Circuit decisions failed to engage meaningfully with binding precedent. Neither *Fox* nor *Lee* cited *Segura*, and both referenced *Jacobsen* only in passing. While *Fox* and *Lee* did discuss *Place*, each interpreted that case as concerning only the amount of time police can detain property on reasonable suspicion before they must acquire probable cause. *See Fox*, 176 F.3d at 351 n.6, *Lee*, 330 F.3d at 464. *Jacobsen* refuted that reading when it authoritatively construed *Place* to hold that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests," and applied that rule to analyze the manner of execution of a seizure lawfully initiated *on probable cause*. 466 U.S. at 124. Thus, under *Place* and *Jacobsen*, where a seizure's "manner of execution"—which includes its duration— is unreasonable, that unreasonableness violates the Fourth Amendment in and of itself; the duration is not, as *Fox* and *Lee* suggest, merely a basis for evaluating the legality of the initial act of taking possession.

Other circuit decisions the district court cited are similarly flawed. *Gilmore v. City of Minneapolis*, 837 F.3d 827, 838 (8th Cir. 2016), granted qualified immunity to an officer who destroyed a person's political sign, explaining that "if the seizure

45

[of the sign] was valid, we doubt [the plaintiff] can assert a Fourth Amendment claim over the sign's destruction." The court reached this conclusion without reference to *Place*, *Jacobsen*, or *Segura*; perhaps for this reason, its conclusion conflicts with *Jacobsen*, which held that the Fourth Amendment applies when the government destroys lawfully-seized property. 466 U.S. at 124 (applying Fourth Amendment to destruction of "trace amount" of powder that police obtained on probable cause).

Likewise, *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) and *Snider v. Lincoln County Board of County Commissioners*, 313 F. App'x 85, 93 (10th Cir. 2008) made no reference to *Place*, *Jacobsen*, or *Segura* in concluding that, although the Fourth Amendment governs the legality of the initial act of seizing property, the Due Process Clause alone applies to claims of unlawfully-prolonged seizures. Neither decision explained why the Constitution mandated this division of labor, or addressed the Supreme Court's admonition that when "the seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth[,] [t]he proper question is not which Amendment controls but whether either Amendment is violated." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993) (cleaned up).

In *Bennett v. Dutchess County*, 832 F. App'x 58, 60 (2d Cir. 2020), the Second Circuit rejected a prolonged seizure claim based on its prior decision in *Shaul v. Cherry Valley-Springfield Central School District*, 363 F.3d 177, 187 (2d Cir. 2004),

which in turn, relied on *Fox* and *Lee*, along with an earlier Second Circuit case that rejected a similar theory solely because the court viewed it as "novel," *see United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992). The First Circuit held the Fourth Amendment inapplicable to prolonged seizure claims based wholly on *Shaul*, *Fox*, and *Lee*. *See Denault v. Ahern*, 857 F.3d 76, 83 (1st Cir. 2017), *superseded by rule not relevant here, as recognized in Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 10 (1st Cir. 2022). None of these decisions even mentioned *Place*, *Jacobsen*, or *Segura* in their analyses of claims that a seizure lasted beyond its reasonable duration.

The quantity of these cases can be explained by their common reliance on *Fox* and/or *Lee*, but when it comes to ignoring Supreme Court precedent (as most of these cases do) or contradicting it (as *Fox* and *Lee* do), there is no safety in numbers.

An independent reason to question the soundness of these decisions is that each of them is in (usually unacknowledged) tension with other decisions in these same circuits concluding that the Fourth Amendment *does* apply when the police unreasonably extend a seizure due to a tardy warrant application. *See supra* pp. 24-25. Thus, the law in these circuits is not as sweeping as dicta in some of these cases might seem to suggest.[3] Instead, there is a recognition among all these circuits that

---

[3] To take one example: Although the Seventh Circuit stated in *Lee* that "[o]nce an individual has been meaningfully dispossessed, the seizure of the property is

the protection of the Fourth Amendment does not end at the moment the government takes physical possession of property—at least in *some* contexts. Yet no circuit has offered a logical explanation why the warrant context receives special treatment. Indeed, aside from the Seventh Circuit, no circuit has even attempted to address the tension.

As for the Seventh Circuit, its analysis is not persuasive. *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012), recognized that under the Fourth Amendment, officers who seized a cell phone on probable cause had to acquire a warrant to search the phone within a reasonable time. The court distinguished its earlier decision in *Lee* on grounds that *Lee* involved a "challenge [to] the police's continued retention of" property, unlike *Burgard*, where (the court stated), the criminal defendant argued that "the police needed within a reasonable time to obtain a warrant" before extracting and searching his phone's data. *Id.* These grievances are effectively the same. Although Burgard's case involved a search, he challenged it as the fruit of an unlawful *seizure*. *See id.* at 1031 ("This case requires us to address one narrow question: did the six-day delay in securing a warrant render the *seizure*

_____

complete, and once justified by probable cause, that seizure is reasonable," 330 F.3d at 466, that categorical limitation on the scope of the Fourth Amendment contradicts that same court's prior recognition that there are situations in which the Fourth Amendment may be violated by the duration of a seizure. *See Moya v. United States*, 761 F.2d 322, 325 n.1 (7th Cir. 1984) ("Even if the officers had probable cause to believe Moya's bag contained contraband, there would be a question whether the three hour detention of the bag before seeking a search warrant was reasonable.").

of Burgard's phone unreasonable for purposes of the Fourth Amendment." (emphasis added)). The court applied the Fourth Amendment to the seizure's length because it intruded on the owner's "possessory interests in the seized object." *Id.* at 1033; *see also id.* ("The longer the police take to seek a warrant, the greater the infringement on the person's possessory interests will be."). *Lee* involved essentially the same problem: police officers refused to return a lawfully-seized car after searching it because they wanted the owner to pay a towing fee. 330 F.3d at 459. Both cases involve intrusions on possessory interests; nothing in *Burgard* explains why they do not receive the same treatment.

This tension reflects a more fundamental one: holding the Fourth Amendment inapplicable beyond the initial seizure is simply incompatible with Supreme Court precedent. The district court here, like *Burgard*, ultimately recognized this point, concluding that, under *Place*, *Segura*, and *Jacobsen*, the Fourth Amendment constrains the duration of at least *some* lawfully-initiated seizures. JA135. Where the court went off course was in reasoning that the Supreme Court decisions applied only to seizures extended by police investigations—a distinction that does not comport with the logic of Supreme Court precedent and which is refuted by *Soldal*.

Perhaps the district court reached its conclusion because it believed that Plaintiffs' claim was better addressed under the Fifth Amendment than the Fourth Amendment. However, the Supreme Court has rejected the view that courts should

"identify[] as a preliminary matter [a] claim's dominant character." *Soldal*, 506 U.S. at 70. "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Id.* Thus, when "the seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth[,] [t]he proper question is not which Amendment controls but whether either Amendment is violated." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993) (cleaned up).

Alternatively, perhaps the district court reached its conclusion because it feared bringing the Fourth Amendment "into territory unknown and unforeseen." *Soldal*, 506 U.S. at 71 (characterizing the concern of the court of appeals decision it reversed). Yet the Supreme Court rejected this concern as a basis for limiting the Fourth Amendment's constraints on seizures. *See id.* The same response it gave there applies here: "[R]easonableness is still the ultimate standard under the Fourth Amendment, which means that numerous seizures [of various lengths] will survive constitutional scrutiny." *Id.* (citations and internal quotation marks omitted). Indeed, in these very cases, Defendants would be free to show in a future summary judgment motion that the seizures (somehow) lasted no longer than reasonably justified by the government's legitimate interests in retaining Plaintiffs' phones. But the district court was wrong to conclude that the Fourth Amendment does not apply at all.

## II.    The District Court's Incorrect Fourth Amendment Analysis Fatally Infected Its Holding on Municipal Liability.

Plaintiffs have asserted that the District is liable for the Fourth Amendment violations here based on the existence of a municipal custom—a "persistent and widespread" practice "so engrained that it amounted to a standard operating procedure of which municipal policymakers must have been aware." *Hurd v. District of Columbia*, 997 F.3d 332, 338 (D.C. Cir. 2021) (cleaned up).

Because the district court concluded that the Fourth Amendment governs the duration only of seizures extended by investigatory activity, it held that Plaintiffs could show that their injuries arose from a municipal custom only by alleging that MPD had a "persistent practice of taking weeks (if not months) to decide whether to secure search warrants for cell phones." JA139. Even though Plaintiffs alleged numerous examples of MPD unreasonably retaining individuals' cell phones, JA25-29, JA55-58, the court deemed those allegations insufficient because they failed to aver that the retentions were prolonged for the *specific purpose* of deciding whether to secure search warrants. JA139. As demonstrated in Part I, the Fourth Amendment governs the duration of lawfully-initiated seizures regardless of the cause of the delay. Thus, the district court erred in discounting Plaintiffs' custom allegations for the same reason it erred in its Fourth Amendment merits analysis. For this reason alone, its municipal liability holding should be reversed.

51

The district court committed additional errors as well. It stated that Plaintiffs' custom allegations left it "equally plausible (if not more so)" that MPD delayed returning the phones because of "simple negligence." *Id.* That ignored Plaintiffs' actual allegations. Almost all of Plaintiffs' custom allegations state that MPD retained a device for an unreasonable duration despite the owner's request for its return. *See* JA25-28, JA55-57. It is reasonably inferable from MPD's refusal to grant these requests that it intentionally retained the devices. At the motion to dismiss stage, Plaintiffs are entitled to that inference; failing to read plausible allegations in the light most favorable to the non-moving party on a motion to dismiss is reversible error. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

More fundamentally, as a legal matter, the Fourth Amendment governs the length of seizures regardless of whether police prolong them deliberately, recklessly, or negligently. Indeed, courts have held that police violated the Fourth Amendment by extending property seizures when the delay arose from "an isolated act of negligence," *United States v. Smith*, 967 F.3d 198, 210, 212 (2d Cir. 2020), or because they "didn't see any urgency" in acquiring a search warrant, *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009).

If officials waited more than 48 hours to provide a pretrial detainee the probable cause hearing required by the Fourth Amendment, *see County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), surely they could not defend their conduct by

52

asserting that they just forgot, *see id.* at 57 (stating that only a "bona fide emergency or other extraordinary circumstance" permits officials to violate the 48-hour rule). That excuse fares no better when it comes to prolonged seizures of property.

Multiple errors undermine the district court's holding on municipal liability.

III.   **Reversal of the Fourth Amendment Claims Requires Vacatur of the Decisions To Decline Supplemental Jurisdiction and Deny Class Certification.**

The district court declined to exercise supplemental jurisdiction over the *Cameron* Plaintiffs' D.C.-law claims because it had "dismissed all claims over which it ha[d] original jurisdiction." JA150 (quoting 28 U.S.C. § 1367(c)(3)). The court declined supplemental jurisdiction over the D.C.-law claims in *Asinor* for the same reason, and also because the court concluded that the "claim[s] raise[d] novel or complex issues of State law." JA155 (quoting 28 U.S.C. § 1367(c)(1)). Because the predicate ruling on the federal claims was erroneous for the reasons explained above, the denial of supplemental jurisdiction should be vacated.

In *Cannon v. District of Columbia*, 873 F. Supp. 2d 272, 288-90 (D.D.C. 2012), as here, the district court denied supplemental jurisdiction over D.C.-law claims based on its dismissal of the federal claims and the novel nature of the common-law claims. This Court reversed the dismissal of federal claims and further held that doing so required it to vacate the supplemental jurisdiction ruling because a premise of that decision no longer held. *Cannon v. District of Columbia*, 717 F.3d

53

200, 208-09 (D.C. Cir. 2013). Applying *Cannon*, if the Court reverses the Fourth Amendment rulings in these cases, it should also vacate the dismissal of the D.C.-law claims, as each dismissal is based, at least partially, on the absence of viable federal claims.

Additionally, the district court denied the *Cameron* class certification motion as moot without reaching the merits "[b]ecause the court grant[ed] Defendant's motion to dismiss." JA151. Since that dismissal should be reversed, the court's conclusion that class certification is moot should be vacated as well.

## CONCLUSION

The judgments of the district court should be reversed.

February 21, 2023                              Respectfully submitted,

*/s/ Scott Michelman*
Scott Michelman
Michael Perloff
Arthur B. Spitzer
Laura K. Follansbee
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 601-4267
smichelman@acludc.org

*Counsel for Plaintiffs-Appellants*
*in Asinor v. District of Columbia,*
*No. 22-7129*, and *Cameron v. District of*
*Columbia*, No. 22-7130

54

Jacqueline Kutnik-Bauder
Carlos Andino
Jonathan M. Smith
Kristin L. McGough
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org

Jeffrey L. Light
Law Office of Jeffrey L. Light
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 277-6213
jeffrey@lawofficeofjeffreylight.com

Tara L. Reinhart
Julia K. York
Joseph M. Sandman
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7630
tara.reinhart@probonolaw.com

*Counsel for Plaintiffs-Appellants
in Cameron v. District of Columbia,
No. 22-7130*

## CERTIFICATE OF WORD COUNT

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 12,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it was prepared in a proportionally spaced typeface (Times New Roman 14-point type) using Microsoft Word.

*/s/ Scott Michelman*
Scott Michelman